[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two consolidated cases arise out of the sale and purchase of a fire extinguisher servicing business, known as Fire Defense Centers, and the lease of the commercial property at 832 Silas Deane Highway in Wethersfield wherein the business being purchased was to be operated. Case #CV-98-101712 entitled MarshaAloi vs. Security Professionals, LLC concerns the lease and will be addressed first. Case #98-0582648S entitled Aloi ElectricServices, Inc. and Paul Aloi vs. Security Professionals, LLC.
concerns the purchase and sale of the business and will be addressed second.
 THE LEASE (CV-98-101712WE) CT Page 5443
In January 1998 plaintiff Marsha Aloi ("Aloi") as lessor and defendants Security Professionals LLC ("SPC") entered into a written lease for the use and occupancy of premises known as 832 Silas Deane Highway, Wethersfield, Connecticut. Although Marsha Aloi entered into the lease (as owner of the property) Paul Aloi, her husband, handled all matters relating to the lease.
In Count One of the amended complaint plaintiff alleges that the defendant defaulted in the payment of rent.
In Count Two plaintiff alleges that defendant vacated the premises on or about October 28, 1998 and that upon vacating the premises it damaged same and did not return the premises to her in good working order. In Count Three she alleges that she is the owner of a telephone system that was located in the premises and that when the defendant left the premises it removed the telephone system. She claims that the removal of the telephone system constituted a theft and she claims treble damages pursuant to General Statutes § 52-564.
The court finds the following facts.
In accordance with Count One of the complaint the parties entered into the lease for use and occupancy of the subject premises on January 14, 1998. (Plaintiff's Ex. 1) The term of the lease was from January 15, 1998 through January 31, 1998. The rent was $24,000.00 per year, payable at the rate of $2,000.00 per month. Paragraph 32 of the lease provides in pertinent part as follows:
"(a) Any payments of base rent, additional rent or any other amounts owing by Tenant to landlord hereunder not paid within 10 days of the due date shall be subject to a late charge of 5% of the amount due and, in addition, the late amount shall thereafter accrue interest at the rate of 12% per annum until paid in full."
"(b) In the event it becomes necessary for either party to use the services of an attorney to enforce or recover damages for breach of the terms and conditions of this lease by the other party, the breaching party agrees to pay all costs, including a reasonable attorney's fee."
The defendant did not pay the rent for the months of September 1, 1998 through January 31, 1999. Plaintiff thus claims she is owed $10,000.00 for that period, plus late charges for eight months at the rate of $100.00 per month (for a total of CT Page 5444 $800.00), plus interest through January 1, 2000 in the amount of $1,300.00. She has subtracted $2,000.00 for a security deposit. Thus she claims and the court finds she is entitled to $10,100.00 for unpaid rent, late charges, and interest.
In addition, because the defendant stopped paying the rent plaintiff brought a summary process action in order to evict the defendant. She incurred legal fees in the amount of $1,517.50 and costs of $141.00 in connection with the summary process action. Thus under Count One she claims and the court finds she is entitled to a total of $11,758.50.
In accordance with Count Two of the complaint the court finds that the defendant, upon vacating the premises, left the premises in a damaged condition. (Plaintiff's Exs. 8a through 8h). The cost of repairing the damage amounted to $2,800.00 (Plaintiff's Ex. 7). Thus, the court finds that she is entitled to that amount under Count Two.
In accordance with Count Three of the complaint plaintiff claims that the defendant, upon vacating the premises, removed the telephone system without the plaintiff's permission. Plaintiff claims this constituted a theft and claims treble damages pursuant to General Statutes § 52-564. The court does not believe the plaintiff has proved this claim. The court notes that on the same day that the lease agreement was signed the parties entered into an "Asset Purchase and Assumption Agreement." (Plaintiff's Ex. 1 in Case #98-582648 below). While the telephone system itself is not mentioned in the specified "transferred assets" the bill of sale attached thereto states the following:
 (The Seller) "does hereby sell, transfer and convey unto the Buyer the following items of personal property: inventory, machinery equipment, fixtures, general and tangible, good will, trademark and trade name of Fire Defense Center, computer equipment and software, office furnishings and fixtures, as are more particularly described on Schedule A attached hereto and made a part hereof."
Furthermore, the following "transferred assets" are listed:
 "All personal property of Aloi Electric Service, Inc., also known as and doing business as Fire Defense Centers, wheresoever located, including without limitation all items of inventory, machinery, equipment, fixtures, general CT Page 5445 intangibles, goodwill, trademarks and trade names, and motor vehicles, all computer equipment and software, and the motor vehicles and office furnishings, all more particularly described as follows:".
Thus, while the telephone system is not specifically mentioned on schedule A, neither are any specific office furnishings and fixtures. Arguably, the telephone system could be constituted a furnishing or fixture, and clearly, it is "personal property." Accordingly, the court finds in favor of the defendant in this regard.
"Although the security system is not mentioned in the complaint, the plaintiff claims that the defendant removed the security system without the landlord's permission. However, it was not clear which party installed it nor what the value of the security system was. Furthermore, as stated in regard to the telephone system, the security system easily could be considered a furnishing, fixture, or personal property. Accordingly, the plaintiff cannot prevail on this claim.
By way of several special defenses the defendant alleges that the roof leaked, that the plaintiff failed to repair the leak, and that said leaking condition was so extensive as to render the premises untenantable. Defendant therefore claims to be excused from paying the rent because it was forced to vacate the premises. By way of special defenses nos. 2 and 6 defendant also alleges that the landlord breached its covenant of quiet enjoyment. Further, by way of counterclaim defendant claims that by virtue of the continuous leaking of the roof it was caused to seek a new place of business, and has incurred certain expenses in connection with the move.
In regard to the leaking roof claim, the court finds the following facts. Paul Aloi admitted that there had been a leak in the ceiling. This occurred in March of 1998. When it occurred Paul Aloi called a roof repairer who made emergency roof repairs. The bill was $473.10 (Plaintiff's Ex. 11). Another leak occurred in June of 1998. There had been a four-inch rainfall which filled the gutters and a roof repairer made minor roof repair. The bill was $99.00 (Plaintiff's Ex. 10)
After the defendant had vacated the premises Paul Aloi discovered holes in the premises which had been drilled by the defendant. One hole was drilled on the north side of the building and two holes had been drilled in the wall of the south CT Page 5446 side of the building. The holes were drilled by the defendant to install an antenna on the roof. One hole on the south side of the building was drilled just above the window and below the suspended ceiling. The second hole was drilled above the suspended ceiling and went through the flashing on the roof. These holes were responsible for some of the leaking that had occurred. After the defendant vacated the premises those holes were patched and there were no further leaks.
Defendant by way of special defense further claims that Paul Aloi interfered with its quiet enjoyment of the tenancy. It claims that Paul Aloi's "errant behavior" was the cause of the interference. The court finds it failed to prove this defense.
After hearing all the evidence the court finds that the plaintiff should prevail under Counts 1 and 2 of the complaint. Under Count One it finds that the defendant failed to pay the rent for several months with insufficient justification. The court further finds that the defendant vacated the premises only after it was evicted pursuant to the summary process action. Defendant did not vacate the premises because of leaks in the roof. The court further finds that the plaintiff incurred certain expenses in order to bring the summary process action, and is entitled to be paid for those expenses. Under Count Two the court finds that the defendant was responsible for leaving the premises in a damaged condition. Thus, the court finds that the plaintiff should prevail under Count Two.
The court finds the plaintiff is entitled to the following damages in connection with its claims under the lease:
1) Lease
Rent September 1, 1998-January 31, 1999 @$2,000.00 per month $10,000.00 Late Charges Eight months @$100.00/month $ 800.00 Interest through January 1, 2000 $ 1,300.00 ---------
 SUBTOTAL $12,100.00 Less Security Deposit $ 2,000.00 --------- $10,100.002) Property Damage $ 2,800.00
 TOTAL OF ABOVE $12,900.00 CT Page 5447
3) Attorneys Fees Costs
 Contingent 1/3 of above (attorney) $ 4,300.00 Summary Process Attorney $ 1,517.50 Costs of summary process action $ 141.00 --------- TOTAL $18,858.50
 THE PURCHASE AND SALE AGREEMENT (CV-98-0582648)
Plaintiffs Aloi electric Services, Inc. ("Aloi Electric") and Paul Aloi have brought this action against defendant Security professionals, LLC by complaint dated November 30, 1998.
In Count One plaintiff Aloi Electric, doing business as Fire Defense Centers, claims it entered into a Purchase and Sales Agreement with defendant on January 14, 1998, that defendant held the sum of $20,000.00 back from the purchase price in accordance with a section of the agreement and that the defendant has breached the agreement by neglecting and refusing to pay the $20,000.00 due and owing to said plaintiff.
In Count Two plaintiff Paul Aloi alleges that he entered into an employment agreement with defendant on January 14, 1998, which agreement was for a period of one year. He claims he was terminated in violation of the terms of the agreement and that he has suffered monetary damage as a result.
In Count Three plaintiff Aloi Electric alleges that subsequent to January 14, 1988 the defendant caused the telephone number of Aloi Electric Services to be transferred over to defendant's name without the consent of Aloi Electric or Paul Aloi. Plaintiff Aloi Electric claims lost income, profit and reputation as a result.
In Count Four plaintiffs Aloi Electric and Paul Aloi claim that the inside of the premises and a trailer outside the premises both contained certain personal property, equipment and supplies belonging to them. They allege that the defendant took the personal property from inside the premises, unlocked the trailer and placed said property inside the trailer. They further allege that the defendant after unlocking the trailer left same unsecured against vandalism and theft, and that as a result they suffered monetary damages. CT Page 5448
In Count Five plaintiffs allege a violation of CUTPA pursuant to General Statutes § 42-110g(c).
The defendant has raised three special defenses to the complaint. In the first special defense it claims that the plaintiff misrepresented information upon which the defendant relied to its detriment in the formation of the employment and Purchase and Sales contracts. In the second special defense defendant claims a setoff for damage caused by Paul Aloi by his actions that were inconsistent with an employee's duty of good faith. In the third special defense defendant claims that the plaintiffs' allegation of a violation of CUTPA is not implicated.
The court finds the following facts. In the fall and winter of 1997 the plaintiffs entered into negotiations in connection with the purchase by the defendant of certain assets of the fire defense center business owned by the plaintiffs. The plaintiffs dealt with a business broker. (Ex. 22).
The negotiations resulted in a purchase and sales contract, a lease, and an employment contract for Paul Aloi. (The lease is the subject of the companion case discussed above. (CV-98-101712)). The Asset Purchase and Assumption Agreement is dated January 14, 1998. Addendum A attached to that agreement is a Bill of Sale of the transferred assets. Addendum B contains historical sales and expenses for the business for 1996 and projected expenses for 1997. Addendum B to the Purchase and Sales Agreement is a list of obligations assumed by the Purchaser. It lists "none." Addendum C is the Employment Contract. Addendum D is the lease (as discussed above).
After the closing, Paul Aloi went to work for defendant pursuant to the employment contract. On or about March 17, 1998 he was fired, and he was told not to return or he would be arrested. Also his attorney sent him a fax which confirmed a conversation which Aloi's attorney had with the attorney for the defendant (Richard Feldman) indicating that he should not return to work. (Ex. 21)
Under Count One of the complaint and pursuant to Section 1(e) of the Purchase Contract the sum of $20,000.00 was held back from the purchase price by the defendant in accordance with the following terms:
"I (e) Holdback
CT Page 5449 "At the closing the purchase price, including the deposit of $8,000.00, less the sum of $20,000.00 shall be paid to Seller. The sum of $20,000.00 will be paid to the Seller 91 days following the closing provided that the net sales (gross sales for the 90 day prior following the closing less 1/4 of the historical expenses as shown on Addendum B) exceed 85% of the projected income less expenses (as adjusted for a 90 day period) as shown on Addendum B. In the event that the net sales does not exceed 85% of the projected income less expenses, as adjusted, then in such event, the Buyer shall deduct from said $20,000.00 a sum of money to be determined as follows:
 The net sales shall be divided by the projected income less expenses, as adjusted, to determine a percentage. This percentage shall be subtracted from 85% to yield an adjustment percentage. The adjustment percentage shall be multiplied by $20,000.00 to yield an adjustment amount."
"The adjustment amount shall be subtracted from $20,000.00, and the balance shall be paid over to the Seller."
The calculations pursuant to Section I (e) show the following: (see Plaintiff's Ex. 2)
"Gross Sales for 90 day Period following Sale: $64,815.38 Less one quarter (1/4) Historical Expenses (Addendum B)
Historical Expenses:
 Cost of Goods: $109,800.00 Expenses: $ 82,900.00 ---------- Total $192,700.00 x 1/4 = $48,175.00 ---------- $16,640.00
85% of Projected Income less Expenses as shown on Addendum B
$55,700 x 85% = $47,345.00
Adjusted for 90 days:
CT Page 5450 $47,345.00 x 1/4 = $11,836.25
There is therefore no holdback since $16,640.38 exceeds $11,836.25."
This calculation indicates that the $20,000.00 was due and payable to Aloi Electric. Although the defendant has claimed that actual expenses in the calculation (as opposed to historical expenses) would have resulted in a much lower number, defendant failed to present credible evidence as to what the actual expenses were. Accordingly, the court finds that the plaintiff Aloi Electric Services is owed $20,000.00 under Count One.
Under the Second Count it is claimed that Paul Aloi was wrongfully terminated from the defendant's employment and he seeks damages as a result. Defendant claims that Paul Aloi left voluntarily, but the court finds he was in fact fired on March 17, 1998. Inasmuch as the defendant denied that Paul Aloi was fired it has failed to give an adequate explanation for his termination. Thus the court finds that Paul Aloi was terminated with insufficient justification in violation of his employment contract. The court finds he is entitled to the following damages in regard to his termination.
1. He is entitled to the balance of his salary which would have been due him if he had worked the entire year or $41,000.00. (See Section 3. (a) of the employment contract)
2. He is entitled to $7,000.00 for his medical insurance.
3. He is entitled to $5,157.99 for unreimbursed expenses (Plaintiff's Ex. 12)
The court does not believe he is entitled to the car allowance he claims inasmuch as he did not drive the car in connection with the defendant's business after his employment was terminated.
Nor does the court find he is entitled to an override of any sales in excess of $250,000.00 pursuant to Schedule B of his employment contract. He failed to prove what the sales over $250,000.00 would have been at the end of the year.
Accordingly, under Count Two of the complaint the plaintiff is entitled to $53,157.99.
Under Count Three of the complaint Aloi Electric Services CT Page 5451 claims that subsequent to January 14, 1988 the defendant caused the telephone number of Aloi Electric Services, Inc. to be transferred over to its name without the consent of either Aloi Electric or Paul Aloi. Plaintiff Aloi Electric claims it lost customers as a result and claims damages.
The court agrees that the defendant did in fact cause the telephone number of Aloi Electric Services, Inc. to be transferred over to its name without the consent of either Aloi Electric or Paul Aloi.
However, in this regard the court finds that the contract for the purchase of the company explicitly transferred to the defendant all assets, including intangible assets. The telephone number which rang at the Silas Deane Highway premises easily could be interpreted to be an intangible asset that would now belong to the purchaser. Also, it is understandable that the purchaser would not want the Aloi Electric telephone to be ringing at the premises at a time when, according to the employment contract, Paul Aloi was expected to use his "best energies and abilities and full business time and attention in the performance of his duties hereunder." (See Section C-5 of the Employment Contract).
In any event, even if the telephone number should not have been transferred without plaintiff's consent, it would be very difficult to determine how many customers the plaintiffs lost as a result. Paul Aloi testified that the plaintiffs suffered a loss of $20,000.00. Yet he testified that the amount of business he had engendered over the years varied depending upon his efforts. The court finds that his claim of $20,000.00 was based on speculative future lost income.
Under Count Four of the complaint plaintiffs claim they had stored personal property, equipment and supplies both inside the subject premises as well as inside a locked trailer which was situated outside the premises. They claim that the defendant unlocked the trailer, and transferred to the trailer the personal property which had been inside the premises. They claim that the defendant left the unlocked trailer unsecured against vandalism and theft and that as a result plaintiffs lost the value of said property. The lost property is listed at Exhibit 18 and the claimed value of same is set forth on a price list attached thereto.
The court does not believe the plaintiff can prevail on this CT Page 5452 claim. The price list is hearsay and thus too speculative.
In Count Five the plaintiffs allege a violation of CUTPA pursuant to General Statutes § 42-110g(c). The court does not believe that CUTPA applies in this case. Count One merely concerns an interpretation of a portion of the Purchase and Sales Agreement. The issue raised in Count Two concerns a violation of the employment contract. Quimby v. Kimberly Clark,28 Conn. App. 660, 670 (1992). Count Three concerns an interpretation of the contract and lack of ascertainable damages. Count Four has been found in favor of the defendant thus. The court does not believe plaintiffs have proven their claims under CUTPA.
The defendant has claimed by way of special defense and counterclaim that the Asset Purchase and Assumption Agreement was induced by fraud and should not be enforced. In this regard the defendant refers to the testimony of Linda Paterson. She testified that she had done bookkeeping work for Paul Aloi prior to the sale of the business to the defendant. She testified that prior to the sale Paul Aloi instructed her to run invoices for work that had not been performed, to alter the books to make it appear that the cash flow was even each month, and to alter large invoices from 1996 to appear as though they were credited to 1997.
In this regard the court notes that Linda Paterson had worked for Paul Aloi on the weekend of December 20th and 21st of 1997. It was during these two days that she would have made such changes. However, all of the financial information in regard to the plaintiffs' business had already been provided to the defendant prior to those dates. Furthermore, the accountants for the defendant had already been in to examine the books and records prior to any claimed activity on the part of Linda Paterson.
While Linda Paterson testified that she made certain modifications in connection with the books, she clearly testified that she had no knowledge as to whether any such reports were in fact given to the defendant. of significance, is that no actual sales figures for 1997 were provided to the defendant. (See Ex. 1, Addendum B which provides only projected figures for 1997)
Furthermore, the court does not find that the defendant relied to its detriment on anything Linda Paterson did or not do, and it failed to show what if any monetary loss it suffered as a result of such a claim. CT Page 5453
Defendant by way of special defense and counterclaim further alleges that plaintiff Paul Aloi breached a warranty that Fire Defense Centers was in material compliance with all federal, state and local laws. Defendant claims that he breached this warranty because prior to the execution of the purchase and sales agreement he failed to disclose that Fire Defense Centers was not properly licensed to operate its business in Massachusetts. However, the evidence showed that licensing for Fire Defense Center in Massachusetts was not transferrable.
The testimony was that Mr. Aloi's license ran out in September of 1997. However, there was a 90-day grace period and then a 45-day period after that in which to renew the license. Since he was selling his business within that time period he could not renew the license. It was thus the defendant's obligation to obtain proper licensure for this business. The licensure of the plaintiffs' business was in place at the time Mr. Aloi conducted his business and there is no information that he breached any representation in that regard. The court believes that Paul Aloi told the defendant that the license was non-transferrable but the defendant neglected to obtain its own license. In any event, the defendant failed to prove at trial how much business it lost as a result of not having a license.
The defendant also claims by way of special defense that Paul Aloi refused to perform ordinary duties of securing sales for the company, that he refused to turn over computer password information, that there was billing for work never performed, double billing, and concealing these transactions. The court does not believe the defendant has proved these claims.
The court finds damages to be as follows:
 Under Count One (for Aloi Electric) $20,000.00 Under Count Two (for Paul Aloi) $53,157.99 ---------- $73,157.99
In summary, in accordance with the dispute involving the lease (#98-101712WE) judgment may enter for the plaintiff Marsha Aloi on Counts One and Two in the amount of $18,858.50 and for the plaintiff on the defendant's counterclaim. Judgment may enter for the defendant under Count Three.
In accordance with the dispute involving the purchase and CT Page 5454 sale agreement (#98-0582648S) judgment may enter for the plaintiffs under counts One and Two in the Amount of $73,157.99 (as set forth above) and for the plaintiffs on the defendant's counterclaim. Judgment may enter for the defendant on Counts Three, Four and Five.
___________________ (Allen) Judge Trial Referee